IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PIONEER CIVIL CONSTRUCTION, LLC                                          PLAINTIFF

v.                                    Case No. 1:22-cv-1034

INGEVITY ARKANSAS, LLC;
and INGEVITY CORPORATION                                                DEFENDANTS

## ORDER

Before the Court is Plaintiff's Motion to Dismiss Amended Counterclaim.[1]  ECF No. 47.

Defendants have responded.  ECF No. 51.  The Court finds the matter ripe for consideration.

## I. BACKGROUND

Plaintiff Pioneer Civil Construction, LLC ("Pioneer") is an Arkansas limited liability company.  Defendant Ingevity Arkansas, LLC ("Ingevity AR") is a Delaware limited liability company registered to do business in Arkansas, and Defendant Ingevity Corporation ("Ingevity Corp.") is a Delaware corporation with its principal place of business in South Carolina.  In the fall of 2021, Pioneer placed a bid to Ingevity AR to perform certain work for construction of an asphalt road within Ingevity AR's facility in Crossett, Arkansas.  Pioneer was later selected to build the road.  The agreement for the work Pioneer was to perform for Ingevity AR is documented in a Revised Purchase Order #4502392369 ("Purchase Order") dated October 4, 2021.  ECF No. 14-1.  The Purchase Order references "Ingevity Terms and Conditions" ("Terms and Conditions"), a separate document that puts forth additional requirements of the contract.  The parties now dispute whether those Terms and Conditions are included in the contract for Pioneer's construction work at Ingevity AR's facility in Crossett.

---

[1] Plaintiff previously filed a Motion to Dismiss (ECF No. 31) Defendants' initial Counterclaim (ECF No. 19). Defendants filed a subsequent Amended Counterclaim.  ECF No. 43.  Therefore, Plaintiff's prior Motion to Dismiss Defendants' Counterclaim (ECF No. 31) is hereby **MOOT**.

Pioneer alleges that Ingevity Corp. ceased to pay invoiced charges for the construction project in November 2021. Pioneer further alleges that it would have completed the project by the end of 2021 absent the delays caused by Ingevity AR. Defendants allege that Pioneer had submitted invoices for work it had not completed. In early January 2022, Ingevity AR terminated its contract with Pioneer for the construction of the asphalt road and barred Pioneer from accessing the Crossett facility. Defendants allege that the termination resulted from Pioneer's failure to adhere to workplace safety requirements and that Pioneer's work on the asphalt road was defective and did not adhere to the construction standards set forth in the contract. Pioneer alleges that these safety standards were not part of the overall contract and were applied retroactively to Pioneer's construction work.

On May 9, 2022, Pioneer filed its first complaint against Defendants in the Circuit Court of Ashley County, Arkansas. ECF No. 3. Pioneer alleged alternative claims of breach of contract, promissory estoppel, unjust enrichment, and interference with business expectancy. Pioneer's original complaint attached the now disputed "Terms and Conditions" document. *Id*. at p. 18-26. On May 10, 2022, Pioneer sent a cease-and-desist letter to Ingevity AR to prevent it from further deconstruction of the asphalt road Pioneer had built in the Crossett facility. On May 13, 2022, Pioneer filed a Motion for Preliminary Injunction or Temporary Restraining Order (ECF No. 22-1), seeking to prevent Defendants from any further demolition of the asphalt road, to allow Pioneer to access the remaining road and road materials to gather evidence for its claims, and to require Defendants to preserve any remaining material from the asphalt road. A hearing was held on that motion on May 19, 2022, at which Defendants chose not to participate. At the hearing, the president of Pioneer, Lance Griffin, testified to his understanding that the Terms and Conditions

2

were a part of the contract for constructing the asphalt road.[2]  ECF No. 21-4, p. 33-35.  At the conclusion of the hearing, the State court indicated it would grant Pioneer's request for an injunction so that it could gather evidence necessary for its claims.  *Id*. at p. 43-50.  Pioneer later provided that court with an order simply stating that the requested injunction was granted without detailing the specifics of the injunction.  ECF No. 2-1, p. 74-75.

On June 13, 2022, Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1332 diversity jurisdiction.[3]  ECF No. 2.  Defendants later moved to have the preliminary injunction imposed by the State court reversed or modified.  ECF No. 31.  The Court granted Defendants' request to modify the injunction after finding that the state court injunction did not meet federal standards.  ECF No. 53.  The modified injunction entered by the Court placed a time limit on which Pioneer had to access the Crossett facility to obtain whatever evidence it needed for its claims.  ECF No. 54.

On July 12, 2022, Pioneer filed its Amended Complaint.  ECF No. 14.  In its amended complaint, Pioneer alleges that the Terms and Conditions were not properly incorporated into the Purchase Order and overall contract.  *Id*. at p. 2-3.  Pioneer brings five claims in the alternate: a claim for breach of contract in which the Purchase Order is the full extent of the contract, a claim for breach of contract in which the Terms and Conditions are determined to be properly incorporated into the contract, a claim for promissory estoppel, a claim for unjust enrichment, and a claim for tortious interference with contract.  *Id*. at p. 10-16.  Defendants filed a motion to dismiss Plaintiff's claims (ECF No. 18), which the Court later denied (ECF No. 56).

---

[2] The Terms and Conditions were also introduced as Exhibit 7 at the hearing.  ECF No. 21-4, p. 97-105.
[3] No party disputes that there is complete diversity between the parties or that the amount in controversy exceeds $75,000.  Accordingly, the Court is satisfied that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

On July 26, 2022, Defendants filed their first Answer and Counterclaim to Pioneer's Amended Complaint.  ECF No. 19.  Pioneer filed a motion to dismiss Defendants' initial counterclaim in its entirety.  ECF No. 31.  Defendants subsequently filed an Amended Answer and Counterclaim.  ECF No. 43.  Defendants' amended answer alleges that Pioneer should never have been awarded the contract to construct the asphalt road because its accumulated safety violations from prior projects made it ineligible to work at Defendants' facility.  *Id*. at p. 29-30.  Defendants also allege that Pioneer was awarded the contract despite its safety record and despite not being the lowest bidder because of kickbacks that Lance Griffin offered to one of Defendants' prior employees who was a project manager.  *Id*.  Defendants further allege that Pioneer's construction of the asphalt road was beset by multiple failures prior to the contract's termination and that an evaluation of the road afterward indicated that all of Pioneer's work needed to be demolished and replaced.  *Id.* at pg. 31-41.  Defendants assert eight claims against Pioneer related to the formation and performance of the contract to construct the asphalt road: breach of contract, negligence, breach of warranty, civil conspiracy, fraudulent inducement, negligent misrepresentation, tortious interference with contract, and unjust enrichment.  *Id*. at p. 41-51.  Defendants seek restitution, compensatory damages, punitive damages, attorney's costs and fees, and pre- and post-judgment interest.  *Id*. at p. 52.

On September 13, 2022, Pioneer filed the instant motion to dismiss Defendants' counterclaim in its entirety.  ECF No. 47.  Pioneer argues that every claim fails because they do not meet pleading standards, either generally or for the specific claims alleged, or fail to include necessary parties.  ECF No. 48, p. 2-15.  Pioneer also argues that nothing alleged in Defendants' counterclaim, even accepted as true, justifies the possibility of punitive damages.  *Id*. at p. 15-16.

Defendants responded in opposition, generally arguing that they have sufficiently met the plausibility pleading standard for each of their claims.  ECF No. 51.

## II. LEGAL STANDARD AND APPLICABLE LAW

### A. Motion to Dismiss Standard

A pleading must "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard "does not require 'detailed factual allegations,' but it demands more that an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  While factual allegations in a complaint are presumed true, unsupported legal conclusions presented as facts are not sufficient to show a pleader is entitled to relief.  *See id*. (citations omitted).  There must be factual allegations underlying a complaint such that the claim of misconduct is sufficiently plausible on its face and not merely a possibility.  *See id*. at 678-79 (citations omitted).  Sufficiently supporting a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Upon motion, a party against whom a claim for relief is sought may assert the defense that the claim is not one upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the complaint in the light most favorable to the non-moving party.  *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (citations omitted).

### B. Applicable Law

The question of which state's law is applicable to the claims in this matter has been presented by the parties in their motions to dismiss.  Defendants assert that South Carolina law governs the claims because the Terms and Conditions contained a choice-of-law provision stating

as much.  Pioneer asserts that the Terms and Conditions were not properly incorporated into the overall contract and that Arkansas law should apply because that is where the contract was formed and all actions pursuant to the contract occurred.  The Court previously declined to make a legal determination on whether the Terms and Conditions were incorporated into the contract in evaluating Defendants' motion to dismiss.  ECF No. 56, p. 9-11.  Because Pioneer had alleged alternate breach of contract claims that embraced the application of either state's law, the Court did not find it necessary to evaluate whether the Terms and Conditions were properly incorporated in order to determine if Pioneer had sufficiently pled its first claim.  *Id* at p. 10-11.  However, the Court now finds that a determination should be made as to which law is applicable to the claims in this matter because of Defendants' counterclaims and because of the anticipated difficulty of having this issue pending during later stages of this litigation.

"Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry."  *Energy Coal v. CITGO Petroleum Corporation*, 836 F.3d 457, 459 (5th Cir. 2016).  A court may make a choice-of-law determination if the "relevant facts are sufficiently clear" from the pleadings and there is no need for discovery to fill in information necessary to determine which state's law applies to the matter.  *Foisie v. Worcester Polytechnical Institute*, 967 F.3d 27, 42-43 (1st Cir. 2020).  In this matter, the Court finds that the relevant congruent facts alleged in each parties' pleading allows a determination regarding which state's law is applicable to these claims.

A federal court sitting in diversity generally applies the law of the forum state.  *See Pals v. Weekly*, 12 F.4th 878, 881 (8th Cir. 2021).  Courts sitting in diversity also apply the choice-of-law principles of the forum state.  *See Miller v. Honkamp Krueger Financial Services, Inc.*, 9 F.4th 1011, 1016 (8th Cir. 2021); *and see George K. Baum & Co. v. Twin City Fire Ins. Co.*, 760 F.3d

795, 799 (8th Cir. 2014) ("Which state's law applies is a legal question decided by the law of the forum state").  "Arkansas courts will enforce a contractual choice-of-law clause, provided that the law selected is reasonably related to the contract at issue and does not violate a fundamental public policy of the forum state."  *Nursing Home Consultant, Inc. v. Quantum Health Services, Inc.*, 926 F. Supp. 835, 841 (E.D. Ark. May 2, 1996) (citing *Arkansas Appliance Distributing Co. v. Tandy Electronics, Inc.*, 292 Ark. 482, 484-85, 730 S.W.2d 899, 899-900 (1987)).

"When a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together."  *Ingersoll-Rand Co. v. El Dorado Chemical Co.*, 373 Ark. 226, 233, 283 S.W.3d 191, 196 (2008) (citations omitted).   "In order to incorporate a separate document by reference into a contract, 'the reference must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the contracting parties.'"  *Id.* (quotation omitted).  "The document to be incorporated 'must be described in such terms that its identity may be ascertained beyond reasonable doubt.'"  *Id.* (quotation omitted).  "Furthermore, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'"  *Id.* (quotation omitted).

The Court finds that the Terms and Conditions were properly incorporated into the overall contract for the construction of the asphalt road.  The Purchase Order stated that acceptance constituted a party's "acceptance of the Ingevity Terms and Conditions" and included an internet hyperlink to access the stated Terms and Conditions.  ECF No. 14-1, p. 2.  That hyperlink connected to a page with four PDF documents entitled "INGEVITY CORPORATION Terms and Conditions of Purchase," and labeled with either "US," "China," "Europe (excluding UK)," or "United Kingdom."  The Court views the clear reference to the Terms and Conditions and where

to access them satisfies the requirements that the reference is "clear" and the document be "easily available." *Ingersoll*, 283 S.W.3d at 196. While the title of the PDF document is not an exact match to that referenced in the Purchase Order and the specific PDF for "US" needed to be selected, the Court does not view these circumstances as creating "reasonable doubt" as to which document the Purchase Order was incorporating. *Id*. Also, Pioneer's prior reliance on the Terms and Conditions to obtain the injunction in state court indicates that it "had knowledge of and assented to the incorporated terms." *Id*. Accordingly, the Purchase Order and the referenced Terms and Conditions are functionally a "single agreement" and the choice-of-law provision within it is part of the overall contract. *Id*.

The Terms and Conditions state that "The Contract and all the performance thereunder shall be governed and construed in accordance with the laws of the State of South Carolina." ECF No. 14-2, p 8. The Court finds this choice-of-law provision enforceable because Defendant Ingevity Corp.'s principal place of business makes South Carolina law reasonably related to this contract and because there is no known Arkansas public policy that would be violated by applying South Carolina law. *See Quantum Health*, 926 F. Supp. at 841. The Court must also determine whether South Carolina law applies to Ingevity's remaining counterclaims. A choice-of-law provision in a contract may govern the interpretation of the contract at issue, but not necessarily accompanying tort claims in the same matter. *See Scott v. Martin*, No. 4:14CV00246 JLH, 2015 WL12672124 at *2-3 (E.D. Ark. Jan. 21, 2015). However, if tort claims are closely related to the performance of the contract, a choice-of-law provision that governs the contract may require that those tort claims be subject to the same law. *See Northwest Airline, Inc. v. Astraea Aviation Service, Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (determining that "claims for negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment raise issues of

8

performance" under the contract).   Because Pioneer's claims and Defendants' counterclaims all relate to the formation or the performance of the relevant contract, the Court finds it appropriate to apply South Carolina law to all claims in this matter.   *See id*; *see also J.D. Fields & Co., Inc. v. Nucor-Yamato Steel*, 976 F. Supp. 2d 1051, 1065-66 (E.D. Ark. Sept. 30, 2013) (determining that a choice-of-law provision governing the contract similarly applied to claims of tortious interference, fraudulent representation, negligent representation, and conspiracy because they were closely related to the contract).

### III. DISCUSSION

**1. Breach of Contract Claim**

Pioneer argues that Defendants failed to sufficiently plead their breach of contract claim under Federal Rules of Civil Procedure 8 and 10(b) because it intermingles multiple causes of action.   ECF No. 48, p. 2-4.   Pioneer contends that Defendants' allegations under this claim are most relevant to a claim of negligence and violate Rule 10(b)'s requirement to limit claims to a single set of circumstances.   *Id*. at p. 2-3.   Pioneer further contends that the claim should be dismissed because South Carolina does not recognize a claim for tortious breach of contract, which Pioneer asserts is the cause of action actually articulated in Defendants' first claim.   *Id*. at p. 3-4. Defendants argue that their breach of contract claim complies with the pleading rules because it is in a separate and clearly delineated section that alleges all the necessary elements for such a claim. ECF No. 51, p. 4-7.   Defendants also contend that the allegations for this claim are limited to the circumstances of Pioneer's alleged failure to perform under the construction contract.   *Id*. at p. 6.

"A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."   Fed. R. Civ. P. 10(b).   Under South Carolina law, "[t]he elements for breach of contract are the existence of the contract, its breach, and the damages

caused by such breach." *Road, LLC v. Beaufort County*, 433 S.C. 164, 176, 857 S.E.2d 371, 376 (S.C. Ct. App. 2021) (quotation omitted).

Evaluating the instant motion in the light most favorable to Defendants, the Court finds that Defendants have sufficiently plead their counterclaim for breach of contract. Defendants' counterclaim for breach of contract, in a distinct section entitled "COUNT ONE Breach of Contract," alleges that there was a contract between Defendants and Pioneer for the construction of the asphalt road, that Pioneer breached the contract by failing to properly construct the road, and that Defendants incurred damages as a result of Pioneer's breach. ECF No. 43, p. 41-42. These factual allegations plainly satisfy the elements for the breach of contract counterclaim and put Pioneer on notice as to the nature of the claim. *See Road,* 857 S.E.2d at 376. While Defendants do refer to "gross negligence" within their allegations in this section, the Court does not view this as extending the allegations beyond a single set of circumstances or functioning to make their claim as one for "tortious breach of contract." Therefore, Pioneer's request to dismiss Defendants' breach of contract counterclaim must be denied.

### 2. Negligence

Pioneer reiterates its prior arguments regarding the breach of contract counterclaim to argue that Defendants have improperly intermingled multiple claims in attempting to allege negligence. ECF No. 48, p. 4. Specifically, Pioneer asserts that in attempting to put forth a claim of negligence Defendants have mixed together claims for fraud in the inducement and negligent misrepresentation. *Id*. Defendants contest that any of the allegations underlying their negligence counterclaim are related to fraud or misrepresentation. ECF No. 51, p. 7-8. Rather, Defendants contend that they have properly presented a claim for negligence by alleging that Pioneer did not

uphold its duty to construct the asphalt road in a manner meeting the standard of care for a professional contractor.  *Id*.

"To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty."  *Hinds v. Elms*, 358 S.C. 581, 585, 595 S.E.2d 855, 857 (S.C. 2004) (quotation omitted).  "It is settled law that if a tort arises out of a contract there must also exist a relationship, irrespective of the contract, that gives rise to a duty."  *Troutman v. Facetglas, Inc.*, 281 S.C. 598, 601, 316 S.E.2d 424, 426 (S.C. Ct. App. 1984) (citing *Meddin v. Southern Ry.-Carolina Division*, 218 S.C. 155, 62 S.E.2d 109 (S.C. 1950)).  "[I]f the cause of action is predicated on the alleged breach, or even negligent breach, of a contract between the parties, an action in tort will not lie."  *Meddin*, 62 S.E.2d at 112. "A mere breach of contract is not actionable as a tort in South Carolina, no matter what the intent of the breaching party was."  *Troutman*, 316 S.E.2d at 426 (citation omitted).

The Court finds that Defendants have failed to state a counterclaim for negligence.  To sustain this claim, Defendants must allege that the contract created a duty beyond simply constructing the asphalt road in adherence to the terms of the contract.  *See Troutman*, 281 S.C. at 601, 316 S.E.2d at 426.  While Defendants have inserted language relevant to negligence in asserting this claim, they have not alleged why Pioneer had a duty to properly construct the road outside of the demands of the contract or how the alleged failure to exercise sufficient care is in any way factually distinguishable from the breach of contract claim.  ECF No. 43, p. 44-45.  In attempting to establish a duty, Defendants simply assert that Pioneer's status as a professional contractor gave it the legal duty to perform the construction contract appropriately.  *Id*. at p. 44. In alleging how Pioneer failed in its duty, Defendants simply refer to the allegations "described

above" in the breach of contract section to demonstrate Pioneer's failure. *Id*. at p. 44. Those bare allegations are fatal to this claim because Defendants must be able to articulate a separate duty Pioneer owed them arising by operation of law that is distinct from simply performing the contract. *See Meddin*, 62 S.E.2d at 112 ("[W]here the contract creates a certain relationship between the parties, and certain duties arise by operation of law, irrespective of the contract, because of this relationship, then the breach of such duties warrants an action in tort."). Without adequately alleging such a distinct and separate duty, Defendants' negligence claim related to failure to perform under the contract "will not lie." *Id*. at 112. Accordingly, this claim must be dismissed.

### 3. Breach of Warranty

Pioneer argues that the implied warranty of workmanlike manner only applies to the construction of homes or dwellings and therefore Defendants have stated an unrecognized claim. ECF No. 48, p. 4-5. Defendants argue that Pioneer relies on irrelevant law and that South Carolina explicitly recognizes an implied warranty of proper workmanship when the entity performing the work has represented themselves as specially qualified for the work. ECF No. 51, p. 8-10.

Evaluating the instant motion in the light most favorable to Defendants, the Court finds that Defendants have sufficiently plead a claim for breach of the implied warranty of workmanlike manner. Defendants are correct that the case cited by Pioneer only indicates how the warranty is interpreted under Iowa law, which is not relevant to this claim.[4] In South Carolina, the implied warranty of workmanlike manner applies to any project performed by one who has held themselves out as being "specially qualified" to perform that work. *Hutson v. Cummins Carolinas, Inc.*, 280 S.C. 552, 558, 314 S.E.2d 19, 23 (S.C. Ct. App. 1984). The warranty asserts that the work "shall be of proper workmanship and reasonably fitted for its intended purpose." *Id*. Defendants'

---

[4] Pioneer specifically cites *Smith Mach. Co. v. C & B Mfg., Inc.*, 840 N.W.2d 728 (Iowa Ct. App. 2013).

counterclaim alleges that Pioneer represented itself as specially qualified for the construction project for which it was contracted and failed to construct the asphalt road in a corresponding manner, resulting in damages. ECF No. 43, p. 45. Accordingly, Defendants have met their burden of stating a claim for a breach of this implied warranty.

### 4. Civil Conspiracy

Pioneer argues that Defendants have failed to state a plausible claim for civil conspiracy. ECF No. 48, p. 5-8. First, Pioneer contends that Defendants have offered nothing but conclusory statements in support of this claim. *Id*. at p. 6. Second, Pioneer contends that the claim fails because the "person" Defendants allege that Pioneer conspired with was one of Defendants' employes, making Defendants' claim functionally against itself and improper. *Id*. at p. 6-7. Pioneer further contends that Defendants have not alleged any facts that the employee was acting outside the scope of their employment. *Id*. at p. 7. Lastly, Pioneer contends that this claim should be dismissed pursuant to Rules 12(b)(7) and 19(a)(1)(A) because the alleged co-conspirator employee is an indispensable party and should have been named as a counter defendant. *Id*. a tp. 7-8.

Defendants argue in response that Pioneer has ignored multiple factual allegations in their complaint underlying the civil conspiracy claim. ECF No. 51, p. 10-11. Also, Defendants contend that they have alleged that the co-conspirator employee was acting outside the scope of their employment when they conspired with Pioneer. *Id*. at p. 11-12. Defendants further contend that all joint tortfeasors are not required to be named as defendants in a single lawsuit. *Id*. at p. 12-13.

"[A] plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4)

damages proximately resulting to the plaintiff." *Paradis v. Charleston County School District*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (S.C. 2021) (citation omitted).   A corporate entity can allege that its employee entered into a civil conspiracy against it if the employee was doing so outside the scope of their employment. *See Cricket Cove Ventures, LLC v. Gilland*, 390 S.C. 312, 325-26, 701 S.E.2d 39, 46 (S.C. Ct. App. 2010) (collecting cases that support the idea that a corporation cannot claim a civil conspiracy against an employee working within the scope of their employment because it functions as a suit against itself).   An employee is not acting within the scope of their employment if the act is disconnected from the interests of the employer's business and intended for the benefit of the employee. *See Pridgen v. Ward*, 391 S.C. 238, 244-45, 705 S.E.2d 58, 62 (S.C. Ct. App. 2010) (citations omitted).   "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

The Court finds that Defendants have sufficiently stated a claim for civil conspiracy. Defendants have alleged that Lance Griffin and an Ingevity AR employee conspired to have Pioneer be awarded the contract for building the asphalt road even though Pioneer was ineligible because of its safety record and because it would not be submitting the lowest bid.  ECF No. 43, p. 46.  Defendants further allege that Lance Griffin was able to get the Ingevity AR employee to participate in this scheme by offering favors and kickbacks, such as the use of a private plane. *Id*. As a result of this conspiracy, Pioneer was awarded the contract for a project for which it was incapable of adequately constructing, and Defendants consequently suffered damages.   *Id*. Accordingly, the Defendants have sufficiently alleged that there was a conspiracy between Lance Griffin and an Ingevity AR employee to unlawfully award Pioneer the contract, that there was an

14

act in furtherance of that conspiracy, and that Defendants suffered damages as a result.  *See Paradis*, 861 S.E.2d at 780.  Pioneer's arguments for dismissal of this claim are not persuasive. Defendants' Amended Answer clearly alleges that the Ingevity AR employee could not have been acting in the scope of their employment because their policies strictly prohibit employees from receiving personal favors or kickbacks.  ECF No. 43, p. 30.  As to Pioneer's argument that the unnamed employee is required to be joined under Rule 19(a)(1)(A), Pioneer has not provided any support for its contention that the employee must be joined to ensure complete relief among the parties or addressed whether joinder of that employee would deprive the court of subject matter jurisdiction due to their citizenship.  Accordingly, Defendants have met their burden of stating a claim for civil conspiracy.

### 5. Fraud in the Inducement

Pioneer argues that Defendants have not met the heightened pleading requirements for a claim alleging fraud.  ECF No. 48, p. 8-10.  Noting that Rule 9(b) requires more particularity in how a claim of fraud must be pled, Pioneer contends that Defendants have not provided sufficient factual allegations to satisfy this heightened standard.  *Id*. at p. 8.  Specifically, Pioneer contends that Defendants have not provided the necessary facts regarding who made any fraudulent statement, the substance of the fraudulent statement, and when the fraudulent statement was made. *Id*. at p. 8-9.  Pioneer also contends that Defendants have only alleged that a fraudulent statement regarding future circumstances was made, which fails to meet the requirement that the statement relate to present circumstances.  *Id*. at p. 9.  Defendants argue that they have satisfied the heightened pleading standard by identifying Lance Griffin as the individual who made false statements about Pioneer's eligibility and capability to perform the construction contract during the bidding process.  ECF No. 51, p. 13-15.

Under South Carolina law:

> A party asserting a claim for fraud in the inducement to enter into a contract must establish "(1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury."

*Brown v. Stewart*, 348 S.C. 33, 41, 557 S.E.2d 676, 680 (quotation omitted). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) "demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how." *U.S. ex rel Costner v. U.S.*, 317 F.3d 883, 888 (8th Cir. 2003). This requires that a claim alleging fraud must specify the identity of the individual that made the misrepresentation, including agents or employees of a corporate defendant against whom the claim is directed. *See Stube v. Pfizer Inc.*, 446 F.Supp.3d 424, 441 (W.D. Ark. Mar. 16, 2020) (citations omitted). Together with standard pleading requirements that emphasize simplicity, the heightened requirements for fraud are "intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel Costner*, 317 F.3d at 888.

Evaluating the instant motion in the light most favorable to Defendants, the Court finds that Defendants' allegations underlying its fraudulent inducement counterclaim do not meet the heightened pleading requirements for fraud. Defendants satisfy the "how," "when," and "where" requirement by alleging that Pioneer included misrepresentations about its eligibility and capabilities within its bid for the construction project. [5] However, the counterclaim lacks the

---

[5] The Court finds that even without a specific date given for when the bid was made, Defendants gave Pioneer sufficient notice of "when" because Pioneer would reasonably know the day it submitted its bid for this project.

requisite particularity for "who" made the alleged misrepresentations and "what" the misrepresentations were.  While Defendants allege that Lance Griffin conspired to have the unworthy bid accepted, they never allege that he is the individual that submitted the bid on behalf of Pioneer.  The Ingevity AR employee he allegedly conspired with also remains unnamed.  This absence of a named individual that made the alleged misrepresentation makes this claim inadequate under Rule 9(b).  *See Stube*, 446 F.Supp.3d at 441.  As to "what," Defendants' allegations do not get more specific than the broad assertion that "Pioneer misrepresented both its ability to properly bid on the Contract . . . and further misrepresented its ability and experience to perform its work[.]"  ECF No. 43, p. 47.  Defendants do not make any allegations regarding the specific language or phrasing Pioneer utilized within its bid for the project.  There are also no allegations regarding the manner in which Pioneer allegedly made these misrepresentations, whether through intentional omission or directly asserted falsehoods.  This lack of particularity does not conform with Rule 9(b)'s requirement that Pioneer be able to respond specifically regarding any alleged misrepresentations within the bid it submitted.  *See U.S. ex rel Costner*, 317 F.3d at 888.  The lack of specificity is especially undermining considering that the alleged misrepresentations were only confined to this single bid and not part of an alleged systemic pattern of fraud occurring over a long span of time.  *See U.S. ex rel. Joshi v. St Luke's Hosp. Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (noting that claims of systemic fraud over time do not need to specify every single instance of fraud, but must at least provide some representative examples with the required specifics).  Accordingly, Defendants have not satisfied the demands of Rule 9(b) in pleading their fraudulent inducement claim and this claim must be dismissed.

### 6. Negligent Misrepresentation

Pioneer argues that Defendants have failed to sufficiently state a claim for negligent misrepresentation. ECF No. 48, p. 10-12. Pioneer notes that such a claim requires that the alleged representation relate to present or pre-existing facts and that broken promises are not sufficient to prove negligent misrepresentation. *Id*. at p. 11-12. Pioneer then contends that Defendants have only alleged representations about future events. *Id*. Pioneer also contends that the alleged misrepresentations were either casual statements or matters that Defendants could have informed themselves of with the exercise of due diligence. *Id*. at p. 12. Defendants argue that the misrepresentations they allege Pioneer made were all related to present circumstances, such as Pioneer's eligibility to bid on the project, Pioneer's ability to perform the project, and Pioneer's proper inspections during construction. ECF No. 51, p. 15-16.

To state a claim for negligent misrepresentation, a claimant must allege:

(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Turner v. Milliman*, 392 S.C. 116, 123, 708 S.E.2d 766, 769 (S.C. 2011). The alleged misrepresentations underlying this claim "must relate to a present or preexisting fact, and cannot be predicated on unfulfilled promises or statements as to future events." *Id*. "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (S.C. Ct. App. 2010) (quotation omitted).

Evaluating the instant motion to dismiss in the light most favorable to Defendants, the Court finds that Defendants have sufficiently alleged a claim for negligent misrepresentation.

Defendants have alleged that Pioneer made false statements regarding its then-present eligibility to bid on the construction project and its capacity to perform so that it could secure the contract. ECF No. 43, p. 48-49.  Defendants further allege that Pioneer had a duty to communicate truthfully in its bid, that it failed in that duty to be truthful, and that Defendants relied upon the misrepresentation in awarding the bid.  *Id.*  As a result of awarding Pioneer the bid based on these false representations, Defendants allege that they suffered monetary losses because of the payments made to Pioneer and the expenses involved in replacing the asphalt road.  *Id.* at p. 49. These allegations are adequate to satisfy the elements of the claim under South Carolina law. *See Turner*, 708 S.E.2d at 769.  As to Pioneer's argument that the alleged misrepresentations were the type of statements not subject to such a claim or that their falsity should have been discovered, the Court finds that such a determination is a fact issue and unnecessary to analyze at the pleading stage.  *See Quail Hill*, 692 S.E.2d. at 508-09 (evaluating whether the type of representations made were those that create liability at the summary judgment stage).  Accordingly, Defendants have sufficiently stated a claim for negligent misrepresentation.

### 7. Tortious Interference with Contract

Pioneer argues that Defendants have failed to allege the necessary elements for their claim of tortious interference with contract.  ECF No. 48, p. 13.  Pioneer contends that Defendants make no allegation that Pioneer knew of any contractual relationship between Defendant Ingevity AR and its employees.  *Id.*  Pioneer also contends that because the allegations involve one of Defendants' employees, who was terminable at will, there was no third-party contract with which it could interfere.  *Id.* at p. 14.  Defendants argue that they have properly alleged every element of the claim because Pioneer knew that the individual it allegedly offered kickbacks to was employed by Ingevity AR.  ECF No. 51, p. 16-18.  Defendants contend that this indicates Pioneer would

have understood that securing its bid through bribes and kickbacks required the employee to violate an aspect of their employment contract. *Id*. at p. 17-18.

Evaluating the instant motion in the light most favorable to Defendants, the Court finds that they have sufficiently pled a claim of tortious interference with contract. "The elements of a tortious interference with contractual relations claim are: '(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages.'" *Hall v. UBS Financial Service Inc.*, 435 S.C. 75, 89, 866 S.E.2d 337, 344 (S.C. 2021) (quotation omitted). It is not necessary to allege that the party interfering with the contract intended the damages, only that the party intended to interfere with the contract. *See Eldeco, Inc. v. Charleston County School Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (S.C. 2007). In their claim, Defendants allege that Ingevity AR had a contractual relationship with its employees and that Pioneer naturally understood that the relationship existed because of their status as employees. ECF No. 43, p. 50-51. Defendants further allege that Pioneer intentionally secured a breach of these contracts by offering the employees kickbacks so that they would violate their contractual duty of loyalty to Ingevity AR by awarding the project bid to Pioneer and foregoing inspections of its work. *Id*. at p. 50. Defendants also allege that there was no legal right or privilege that permitted Pioneer to procure this breach. *Id*. As a result of this breach of the employment contract, Defendants allege they suffered damages because Pioneer was paid for substandard work it should never have been permitted to perform and more expenses would be necessary to replace the work. *Id*. at p. 50-51. The Court views these allegations as having satisfied Defendants' burden of alleging every element of their tortious interference with contract claim.

### 8. Unjust Enrichment

Pioneer argues that Defendants' unjust enrichment claim fails because Pioneer was legally entitled to payments for the construction project pursuant to the contract with Defendants.  ECF No. 48, p. 14-15.  Defendants argue that Pioneer's receipt of payments was the result of deception and that it is not entitled to keep the payments made for the work it did not adequately perform.  ECF No. 51, p. 18-20.  Defendants note that a breach of contract claim and an unjust enrichment claim can be alternate theories of recovery within a single suit and that the existence of a contract does not necessarily preclude recovery under an unjust enrichment theory.  *Id*. at p. 18-19.

A plaintiff alleging that a defendant has been unjustly enriched at the plaintiff's expense can proceed under the equitable doctrine of quantum meruit.  *See JASDIP Properties SC, LLC v. Estate of Richardson*, 395 S.C. 633, 639-40, 720 S.E.2d 485, 488-89 (S.C. Ct. App. 2011) (citations omitted).  Such a claim allows a plaintiff to recover "that amount the defendant has been benefitted at the expense of the plaintiff in order to preclude unjust enrichment."  *Id* (quotation omitted).  For a claim of unjust enrichment through quantum meruit, a plaintiff must allege: "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value."  *Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 616-17, 703 S.E2d 221, 225 (S.C. 2010).  There is no inherent inconsistency in alleging alternative claims of breach of contract and quantum meruit under the same factual circumstances.  *See Franke Associates by Simmons v. Russel*, 295 S.C. 327, 331-32, 368 S.E.2d 462, 464-65 (S.C. 1988).  However, the party alleging those claims will not be permitted to prevail under both if it would result in double recovery for a single injury.  *See id*.

Evaluating the instant motion in the light most favorable to Defendants, Court finds that Defendants have sufficiently stated a claim for unjust enrichment.  Defendants allege that they made payments to Pioneer pursuant to a construction contract that Pioneer should never have been awarded and for work that Pioneer did not adequately perform.  ECF No. 43, p. 51.  Defendants seek compensation equal to the amount it paid to Pioneer that it has not recouped.  *Id*.  This satisfies the elements of unjust enrichment by alleging that Defendants conferred the benefit of payments to Pioneer, that Pioneer received the payments, and that it would be unjust for Pioneer to keep the payments in light of the work it performed.  *See Earthscapes*, 703 S.E.2d at 225.  That Defendants will not be able to recover under both this claim and their alleged breach of contract claim does not make their pleading of both claims impermissible.  *See Franke*, 368 S.E.2d at 464-65; *see also* Fed. R. Civ. P. 8(d)(3) (When pleading, "[a] party may state as many separate claims or defenses as it has, regardless of consistency.").  Accordingly, Defendants have sufficiently stated a claim for unjust enrichment.

### 9. Punitive Damages

Pioneer argues that the Court should dismiss any request for punitive damages for Defendants' claims.  ECF No. 48, p. 15-16.  Pioneer contends that even accepting the facts alleged in Defendants' counterclaims as true, they do not make recovery of punitive damages possible.  *Id*.  Defendants do not address this argument in their response.

The Court finds that a blanket dismissal of Defendants' requests for punitive damages is unwarranted and premature at this time.  "Punitive damages should be submitted to the jury when there is evidence a tort-feasor's conduct was willful, wanton, or in reckless disregard of the rights of another. Ordinarily, the test is whether the tort has been committed in such a manner or under circumstances that a person of ordinary reason or prudence would have been conscious of it as an

invasion of the plaintiff's rights." *Carter v. Lesley*, 290 S.C. 333, 337, 350 S.E.2d 388, 390 (S.C. 1986). If a plaintiff has stated a claim that could permit recovery of punitive damages under state law, a court should not make a legal determination regarding the appropriateness of those damages at the motion to dismiss stage. *See AJM Exp., Inc. v. H&S Transp., Inc.*, 53 F.3d 1282 (5th Cir. 1995); *see also Hindsman v. Carnival Corporation*, No. 19-23536-CIV-ALTONAGA, 2020 WL13369050 at *2 (S.D. Fla. Aug. 6, 2020) ("Whether [party's] acts and omissions are factually enough to warrant an award of punitive damages is an inquiry not suited for determination at the motion-to-dismiss stage); *and see Flaherty v. Kirk*, No. 10-CV-4132, 2011 WL2680414 at *2 (W.D. Ark. July 8, 2011) (noting that sufficient allegations for punitive damages at the pleading stage can be revisited at the summary judgment stage after further factual development). The Court views Defendants' sufficiently pled claims as permissibly requesting punitive damages because the allegations of Pioneer's deception during the bidding and construction process for the asphalt road project suggests "willful" disregard for Defendants' rights. *See Carter*, 290 S.C. at 337, 350 S.E.2d at 390. Accordingly, it is not appropriate to grant Pioneer's request in the instant motion that all Defendants' claims for punitive damages be dismissed. *See AJM*, 53 F.3d at 1282; *Hindsman*, 2020 WL13369050 at *2; *Flaherty*, 2011 WL2680414 at *2   Pioneer may renew its request after discovery has permitted more factual development on the matters relevant to an award of punitive damages.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Pioneer's Motion to Dismiss Amended Counterclaim (ECF No. 47) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Defendants' counterclaims for negligence in Count Two and for fraud in the inducement in Count Five are hereby **DISMISSED WITHOUT PREJUDICE**. Defendants' remaining

claims may proceed.  The Court will not make a legal determination on Defendants' request for punitive damages at this time.  Pioneer's previous Motion to Dismiss Counterclaim (ECF No. 31) is hereby **MOOT**.

       **IT IS SO ORDERED**, this 3rd day of March, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge
