IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PIONEER CIVIL CONSTRUCTION, LLC                                    PLAINTIFF

v.                            Case No. 1:22-cv-1034

INGEVITY ARKANSAS, LLC;
and INGEVITY CORPORATION                                          DEFENDANTS

**ORDER**

    Before the Court is Plaintiff-Counter Defendant Pioneer Civil Construction's ("Pioneer") Motion for Sanctions. ECF No. 87. Defendants-Counter Plaintiffs Ingevity Arkansas, LLC and Ingevity Corporation (collectively "Ingevity") responded. ECF No. 102. Pioneer replied. ECF No. 110. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

    In fall 2021, Ingevity sought bids for a construction project (the "Project") within its facility in Crossett, Arkansas (the "Plant"). The Project sought to build an asphalt road for 18-wheelers to use before loading or unloading material within the Ingevity Plant. In October 2021, Ingevity selected Pioneer's bid for the Project and entered into a contract for its construction. Pioneer finished its construction work on the Project on November 1, 2021. Ingevity employee Amy Bantly inspected and approved the final construction.

    Shortly after Pioneer completed its work on the Project, concerns and disagreement arose regarding the build quality of the road and Pioneer's adherence to the Project specifications. In early December 2021, Pioneer president Lance Griffin ("Griffin") offered to drill core samples of the asphalt road for Ingevity to confirm Pioneer's adherence to the Project specifications. ECF No. 102-5, p. 2-3. Griffin states that no Ingevity personnel arrived at the scheduled time for the samples to be taken and that he left the Plant after waiting for an hour. *Id*. at p. 3-4. Griffin states

that Ingevity personnel contacted him shortly afterward seeking to conduct the test but that he told them he would only return to do so at a charge of $2,000 per core sample. *Id*. at p. 4. Griffin did not take any core samples that day.

Ingevity subsequently hired Terracon Consultants, Inc. ("Terracon") to take core samples of the asphalt road. Terracon took four samples on December 16, 2021. Griffin was present for this testing. Terracon issued a report (ECF No. 102-3) on December 27, 2021 stating that two of the core samples did not meet Project specifications for asphalt thickness. Terracon did not preserve the core samples and did not attach any photographs or field logs to the report.

Ingevity hired Diversified Construction & Design, L.L.C. ("Diversified") to take additional core samples of the asphalt road. Diversified took four samples on January 6, 2022. Ingevity personnel present[1] when Diversified took those samples allege that three of the samples indicated that the road did not meet Project specifications. Diversified did not preserve the samples and did not create a written report or opinion on the samples. The only documentation of Diversified's testing is photographs of the holes in the road from which the core samples were taken.

On January 4, 2022, Ingevity ordered Pioneer to suspend its work and barred Pioneer and its employees from accessing the Plant, citing Pioneer's noncompliance with safety standards. On January 10, 2022, Ingevity terminated Pioneer from the Project, citing Pioneer's allegedly noncompliant safety ratings and procedures as well as various safety violations. On January 12, 2022, counsel for Pioneer sent an email (ECF No. 87-11) to Ingevity stating Pioneer's position that it is entitled to the remaining unpaid portions of the Project contract. Pioneer and Ingevity

---

[1] Ingevity asserts that Griffin was present when Diversified took its samples of the asphalt road. However, the evidence Ingevity cites for support, the deposition testimony of Ike Kotey, in no way indicates that Griffin was present for that testing. ECF No. 102-4.

continued to communicate in the following months regarding their positions as to the Project contract and what payments were owed to whom. ECF Nos. 41-1, 41-2, 41-3, & 41-4.

Ingevity personnel state that they began noticing visually apparent defects in the Project road as early as February 2022. Ingevity eventually hired Terracon to do an analysis of the road to determine whether it was constructed in compliance with the Project specifications. Terracon initiated this analysis on April 4, 2022, which included pulling four more core samples from the asphalt road. Ingevity asserts that all four core samples indicated that the road did not meet Project specifications for asphalt or aggregate base thickness. Terracon later issued a report of its findings (ECF No. 87-12) but did not preserve the core samples or any field logs or photographs of its testing.

In late April 2022, four Ingevity employees collectively determined that the asphalt road constructed by Pioneer needed to be replaced. On May 5, 2022, counsel for Pioneer informed an Ingevity representative that they did not accept a previous proposal to resolve the dispute and requested information regarding whether the Ingevity representative was authorized to accept service on behalf of Ingevity. ECF No. 87-17. On May 6, 2022, LA Construction submitted a bid to demolish and rebuild the Project asphalt road, which Ingevity accepted. LA Construction began its work to demolish the asphalt road early on May 9, 2022, and substantially completed the work by the end of that day. That same day, Pioneer filed its initial complaint against Ingevity in the Ashley County, Arkansas Circuit Court. ECF No. 3. Pioneer alleged alternate claims of breach of contract, promissory estoppel, unjust enrichment, and interference with business expectancy. *Id*. Pioneer issued a Cease-and-Desist letter to Ingevity on May 10, 2022, demanding that it halt all demolition of the asphalt road. Ingevity complied and LA Construction stopped its work. A

small section of the asphalt road remained and the material from the demolished portions were placed into piles.

Pioneer filed a Motion for Preliminary Injunction in the Ashley County Circuit Court on May 13, 2022, seeking that Ingevity be ordered to preserve all evidence of the Project road built by Pioneer and to provide Pioneer with reasonable access to the Plant. ECF No. 21-1. The Circuit Court granted Pioneer's motion for the injunction, ordering Ingevity to preserve all evidence of the Project road and to permit Pioneer access to that evidence. ECF No. 4; ECF No. 21-4, p. 42-50. On June 13, 2022, Ingevity removed the action to this Court pursuant to 28 U.S.C. § 1441(b), alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 2, p. 1-3.

Pioneer subsequently filed a motion for this Court to enforce the injunction issued by the state court, arguing that Ingevity was not abiding by the injunction. ECF No. 16. The Court held that the state court injunction was still in force upon removal pursuant to 28 U.S.C. § 1450, but also found that Ingevity's conditions for accessing the Plant were not unreasonable and that Pioneer had not demonstrated why it could not comply with those conditions. ECF No. 37. Ingevity then filed a motion to modify or reverse the state court injunction, arguing that the injunction was deficient under the Federal Rules of Civil Procedure. ECF No. 34. On October 11, 2022, the Court granted Ingevity's request to modify the injunction, ordering that the injunction's requirement that the asphalt road evidence be preserved would elapse forty-five (45) days from the date of that order. ECF Nos. 53 & 54. Pioneer's retained expert obtained access to the Plant in October and November 2022 for testing and examination of the Project road evidence. ECF No. 87-15.

Pioneer eventually submitted an Amended Complaint, which alleged alternate claims of breach of contract, promissory estoppel, unjust enrichment, and tortious interference with contract.

ECF No. 14. Ingevity filed numerous counterclaims against Pioneer. ECF No. 19, p. 31-43. Ingevity later submitted amended counterclaims. ECF No. 43, p. 41-54. Pioneer moved to dismiss Ingevity's amended counterclaims. ECF No. 47. The Court granted Pioneer's motion to dismiss Ingevity's counterclaims in part, leaving several claims to proceed. ECF No. 58.

On August 7, 2023, Pioneer filed the instant motion seeking a multitude of sanctions against Ingevity for spoliation of evidence. ECF No. 87. Pioneer argues that the circumstances indicate that Ingevity intentionally demolished the Project road to eliminate evidence of Pioneer's compliance with Project specifications. ECF No. 88. Ingevity responded in opposition, arguing that the record demonstrates that Ingevity demolished the road to replace what it legitimately believed to be substandard construction. ECF No. 102. Pioneer replied, arguing that the circumstances clearly show that Ingevity sought to deprive Pioneer of evidence that it needed for its claims. ECF No. 110.

## II. DISCUSSION

As sanctions for Ingevity's alleged spoliation of the Project road evidence, Pioneer "specifically requests the following relief: 1. An order striking Ingevity's answer to Pioneer's complaint; 2. A default judgment against Ingevity on Pioneer's complaint; 3. An order dismissing with prejudice Ingevity's amended counterclaim; 4. An order prohibiting Ingevity from offering at trial any evidence or argument that Pioneer failed to construct the subject road in accordance with the contract specifications or that there were otherwise any defects in Pioneer's work; 5. An adverse-inference jury instruction against Ingevity; 6. An award of Pioneer's attorneys' fees and costs in this litigation; and 7. All other relief to which Pioneer is entitled." ECF No. 88, p. 14-15.

The Court will first outline the relevant standard for imposing sanctions for spoliation of evidence before addressing the parties' arguments and applying that standard to the circumstances of this dispute.

**A. Standard for Imposing Sanctions**

"A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).[2] Abuses that can warrant sanctions include the spoliation of evidence. *See id.* at 745-46. "Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Crain v. City of Selma*, 952 F.3d 634, 639 (5th Cir. 2020) (quotation omitted). "[F]ederal law applies to the imposition of sanctions for the spoliation of evidence." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (collecting cases).

"Before a sanction for destruction of the evidence is appropriate, however, there must also be a finding that the destruction prejudiced the opposing party." *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993). Prejudice requires finding that the evidence is both relevant and not available to the party through any other means. *See Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004); *see also Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (determining that there was no prejudice from not preserving the evidence because there was other relevant evidence available to the party on the issue). The "nature of the evidence destroyed" can make the prejudice readily apparent in certain instances. *Stevenson*, 354 F.3d at 748. Relevant to a determination of prejudice is whether the "allegedly harmed party took other

---

[2] Pioneer is not seeking sanctions pursuant to statute or to Federal Rules of Civil Procedure 37 or 11.

6

available means to obtain the requested information." *Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010) (citation omitted).

The sanction of an adverse inference jury instruction for the spoliation of evidence requires a finding of "intentional destruction indicating a desire to suppress the truth." *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (quoting *Stevenson*, 354 F.3d at 748).[3] The sanction of dismissal for spoliation requires the same. *See Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (citing *Stevenson*, 354 F.3d at 746). For a sanction of attorney's fees, "[a] bad faith finding is specifically required" and must involve conduct that "practiced a fraud upon the court or defiled 'the temple of justice[.]'" *Stevenson*, 354 F.3d at 751 (internal quotation omitted). "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). The critical inquiry for spoliation sanctions is the intent to suppress the truth and not a party's knowledge of "the prospect of litigation." *Wade*, 485 F.3d at 1035.

The Eighth Circuit has not directly stated what standard applies for the sanctions of entering a default judgment and striking a pleading pursuant to a court's inherent power. However, a default judgment sanction pursuant to Federal Rule of Civil Procedure 37 requires a finding of willfulness or bad faith. *See Comiskey v. JFTF Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993). Noting that a court must exercise its inherent powers with "restraint and discretion," the Court finds that it must apply at least as stringent a requirement for a default judgment under its inherent powers as it would under Rule 37. *Chambers*, 501 U.S. at 44-45. Thus, the Court will require a finding

---

[3] The requirement of an explicit finding of bad faith for an adverse instruction applies to pre-litigation destruction of evidence, which is the issue in this matter. *See Murley*, 703 F.3d 461 (determining that "'an explicit bad faith finding' is required in the usual case involving pre-litigation spoliation of evidence.").

of bad faith before imposing a sanction of default judgment. This requirement will also apply to the sanction of striking a party's answer because of the functionally similar outcome. Excluding evidence as a sanction for spoliation does not necessarily require a finding of bad faith. *See Dillon*, 986 F.2d at 267 ("We do not hesitate in determining that the findings in this case—a retained witness and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation—are sufficient for imposing sanctions.").[4] "[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Id*. at 268.

The Court will first determine whether Pioneer has sufficiently shown that it has been prejudiced by Ingevity's near total demolition of the Project road. The Court will then determine if the circumstances of that demolition could warrant any of the sanctions Pioneer requests.

**B. Prejudice to Pioneer**

Pioneer argues that it has been indisputably prejudiced by Ingevity's demolition of the Project road. ECF No. 88, p. 11-12. Pioneer contends that the quality of its construction is central to its claims and to Ingevity's counterclaims in this matter. Pioneer further contends that it never had an opportunity to perform any tests of the road or inspect it as-built prior to demolition. Pioneer also emphasizes that it never had an opportunity to examine the core samples taken by Ingevity's hired contractors and that those samples were not preserved. Pioneer also asserts that its expert could only examine piles of rubble and notes that Ingevity's expert stated that it would be improper to reach any conclusions from such an examination. Pioneer concludes that Ingevity's actions have clearly erased evidence critical to furthering its claims and defending against Ingevity's counterclaims.

---

[4] As this Court has noted, the Eighth Circuit has not explicitly abandoned the "knew or should have known" standard for excluding evidence for spoliation but has simply declined to apply that less onerous standard to requests for adverse inference instructions and dismissal of claims. *See Am. Nat'l Prop. & Cas. Co. v. Broan-Nutone, LLC*, No. 5:18-CV-5250, 2020 WL 6380501, at *2 (W.D. Ark. Oct. 30, 2020).

In response, Ingevity argues that sufficient evidence remains to show that Pioneer has not been prejudiced by Ingevity's decision to demolish the road. ECF No. 102, p. 10-13. Ingevity first emphasizes that a portion of the road constructed by Pioneer was not demolished and that Pioneer's expert took a core sample from that portion. Ingevity then notes that all material from Pioneer's construction was preserved, and that Pioneer's expert was able to issue a report based upon his examination of that material and the core sample taken from the remaining portion of the road. Ingevity contends that Pioneer has not shown why this expert report would differ from one made from the as-built road. Ingevity also asserts that Pioneer's expert could have taken more core samples from the remaining portion but chose to only take one. Ingevity then contends that Pioneer could have requested to take its own core samples in the months prior to demolition but completely failed to do so. Ingevity concludes that the evidence gathered from the remaining portion of the road shows that there is evidence on this issue available to Pioneer and that Pioneer has not been prejudiced.

In reply, Pioneer argues that it has sufficiently shown that Ingevity's demolition of the road was prejudicial. ECF No. 100, p. 3-6. Pioneer emphasizes that Ingevity's own expert testified that material and methods available to Pioneer's expert were insufficient to reach a reliable conclusion regarding the Project road's build quality. Pioneer also contends that the remaining portion of the built road is relatively small and that the piles of asphalt cannot unequivocally show that Pioneer complied with the Project specifications. Pioneer then disputes Ingevity's argument that Pioneer never attempted to take its own samples by noting that Pioneer personnel had been barred from accessing the Plant since January 2022. Pioneer contends that Ingevity has been consistently hostile to allowing Pioneer to access the Plant for testing and asserts that it took this Court's order on October 11, 2022 (ECF No. 53) to force Ingevity to permit Pioneer to inspect the

9

x

road. Lastly, Pioneer contends that the scarce documentation by Ingevity of its prior testing, which consists of a few photographs of the core sample holes, is wholly inadequate to provide the same information that would result from testing the as-built road.

    The Court finds that Pioneer has failed to show that it has been prejudiced by Ingevity's demolition of the Project road. The Court concludes so because of the evidence it finds was still available to Pioneer and because of Pioneer's failure to conduct testing or take samples of the road in the months prior to demolition. As to available evidence, Pioneer does not dispute that an intact portion of the road remained for testing by its expert and that a core sample was taken from that portion. Together with examination of other material, Pioneer's expert was able to form a report which appears to conclude that Pioneer's construction met the Project specifications. ECF No. 87-15. Just because the entire as-built road was not available does not mean that Pioneer has not been able to gather evidence that can support its claim and be used to dispute arguments from Ingevity. *See Wade*, 485 F.3d at 1036 (finding no prejudice because other evidence existed on the issue); *Koons*, 367 F.3d at 780 (finding no potential prejudice because there would be testimony from the author of the lost investigatory notes); *see also Am. Nat'l Prop. & Cas. Co. v. Broan-Nutone, LLC*, No. 5:18-CV-5250, 2020 WL 6380501, at *4 (W.D. Ark. Oct. 30, 2020) (finding that there was no prejudice from a failure to preserve certain evidence because there was sufficient evidence remaining for the moving party's expert to form opinions to cast doubt on the opposing party's case).

    The record also indicates that Pioneer did not utilize early opportunities to conduct testing and make documentation and then failed to request later opportunities. Pioneer's argument that it had no opportunity to conduct testing prior to demolition is not persuasive. While Pioneer may have been generally barred from the Plant for alleged safety violations starting in January 2022,

10

Pioneer never alleges that it specifically requested access to conduct testing or take samples from the Project road in the following months. Further, Pioneer appears to have had opportunities to conduct its own testing in the months prior when it was aware of potential disagreements regarding the build quality of the road. Griffin confirms that he was ready to take core samples in early December 2021, but that he left the Plant after waiting an hour and declined to return unless paid a "ridiculous" amount per core sample. ECF No. 102-5, p. 4. Also, Pioneer does not dispute that Griffin was present for Terracon's December 2021 testing and failed to make any documentation of his own during that testing. These passed upon opportunities and failures to make later requests to obtain the evidence weigh against Pioneer's current assertion of prejudice.[5] *See Gallagher*, 619 F.3d at 844 (noting an evaluation of prejudice includes examining whether a party "took other available means to obtain the requested information.").[6]

Accordingly, the Court finds that Pioneer has failed to show it has been prejudiced by Ingevity's demolition of the asphalt road and that its request for spoliation sanctions must be denied. *Dillon*, 986 F.2d at 267. However, to be thorough, the Court will also analyze the parties' arguments regarding whether the circumstances of the demolition would warrant sanctions as if the Court did find prejudice.

### C. Whether Circumstances Justify Sanctions

Pioneer argues that the circumstances of this matter create a strong inference that Ingevity demolished the asphalt road with an intent to suppress the truth. ECF No. 88, p. 7-11. Pioneer

---

[5] Ingevity also asserts that Griffin was aware of Ingevity's intention to demolish the road prior to the commencement of any demolition. ECF No. 102, p. 4. However, Ingevity cites to no evidence or testimony to support that assertion.
[6] To support its contention that Ingevity consistently prevented Pioneer from accessing the Project road, Pioneer asserts that Ingevity would not permit access to the Plant for inspection of the road until forced to do so by this Court's order (ECF No. 53) on October 11, 2022. That assertion is false. On August 19, 2022, while enforcing the injunction issued by the state court, the Court found that Ingevity's conditions for accessing the Plant were not unreasonable and that Pioneer had not offered any explanation as to why the conditions were too burdensome. ECF No. 37, p. 4-5. The Court's October 11, 2022 order modifying the original injunction reaffirmed that the conditions for access were not too burdensome and that Pioneer had engaged in "undue delay" in not accessing the Plant. ECF No. 53, p. 8.

contends that the timing of the demolition coupled with Ingevity's knowledge of potential litigation makes it clear that the demolition was meant to prevent Pioneer from being able to demonstrate that it constructed the road according to the Project specifications. Pioneer emphasizes that Ingevity was aware of the possibility of litigation for months prior to the demolition. Pioneer further emphasizes that its counsel made their intent to commence litigation clear days before Ingevity initiated the demolition. Pioneer asserts that Ingevity undoubtedly knew that the quality of the road's construction would be a key issue in that litigation. Pioneer also notes that one of the Ingevity employees who voiced early concerns about the road had a grudge against Griffin and implies that all concerns about build quality stem from that grudge. Pioneer concludes that these circumstances clearly indicate that Ingevity destroyed the road to prevent Pioneer from obtaining highly relevant evidence.

Pioneer asserts that this destruction of evidence matches the situation addressed by this Court in *Ragan v. Stafford*, No. 4:16-CV-4097, 2017 WL 4764620 (W.D. Ark. Oct. 20, 2017). In *Ragan*, the plaintiff sought sanctions against a defendant who had removed and destroyed a barbed-wire fence that the plaintiff alleged was critical to their negligence claim. *Id*. at *1-2. This Court found that the defendant's removal and destruction of the fence a few weeks after the commencement of litigation and with little indication of a prior desire to replace the fence created a sufficiently strong inference that the defendant destroyed the fence to suppress the truth. *Id*. at *2-3. Pioneer contends that the destruction of evidence justifying sanctions in *Ragan* is congruent to Ingevity's destruction of the road when it was aware that the road was critical to impending litigation.

Pioneer asserts that Ingevity's intentional destruction of evidence warrants a multitude of sanctions. ECF No. 88, p. 12-14. To balance out the prejudice, Pioneer states that Ingevity's

actions warrant striking Ingevity's answer, entering a default judgment against Ingevity, dismissing Ingevity's counterclaims, and granting Pioneer attorney's fees and costs. Pioneer also seeks two alternative non-dispositive sanctions: 1) that Ingevity be barred from offering any evidence or argument suggesting that Pioneer did not build the road according to the Project specifications, and 2) an adverse inference jury instruction be given that permits an inference that evidence derived from the road would be unfavorable to Ingevity.

In response, Ingevity argues that the circumstances only indicate that Ingevity sought to replace a road that it believed to be faulty. ECF No. 102, p. 6-10. Ingevity contends that this matter is clearly distinguishable from *Ragan* because the record shows that concerns about the quality of the road existed as early as November 2021 and because the demolition began prior to Pioneer filing its complaint. Ingevity further contends that the record shows that the decision to demolish and rebuild the road in April 2022 was based upon data gathered by third-party testing. Ingevity also emphasizes that testimony from Ingevity employees that were part of that ultimate decision shows that the testing was done in response to long-running concerns regarding the quality of the road. Ingevity concludes that these genuine concerns and the data informed decision to rebuild the road clearly trump whatever coincidences of timing that Pioneer has tried to frame as indicative of a desire to suppress the truth.

In reply, Pioneer emphasizes that Ingevity personnel testified that they knew in April 2022 that litigation over the road was possible when they decided to demolish the road. ECF No. 110, p. 2-4. With the obvious importance of the road to any such litigation, Pioneer contends that Ingevity's decision to demolish the road anyway shows clear bad faith and Ingevity's intent to suppress the truth regarding the road. Also, Pioneer asserts that Ingevity failed to present any

evidence that the road needed to be completely replaced, which makes their attempt at total demolition more suspect.

The Court finds that Pioneer has failed to show that the circumstances surrounding the demolition of the Project road warrant sanctions. In the Court's evaluation of the record, the most likely reason for Ingevity's decision to demolish the road was concern over build quality. The early concerns.[7] voiced by Ingevity personnel, the multiple tests Ingevity requested from Terracon and Diversified, and the fact that the decision[8] to demolish the road only came after that testing tends to show that the demolition was done out of concern for the road's condition. That evidence overpowers any potential inference that Ingevity demolished the road to deny Pioneer's access to evidence. Therefore, the requested sanctions of dismissal, attorney's fees, or an adverse inference instruction for spoliation of evidence are not appropriate. *See Menz*, 440 F.3d at 1006 (noting that a sanction of dismissal for spoliation requires a finding of an intent to suppress the truth); *Stevenson*, 354 F.3d at 748, 751 (noting that a sanction of an adverse inference instruction or attorney's fees for spoliation requires finding an intent to suppress the truth or bad faith). Likewise, as the Court determined above, the lack of a finding of bad faith precludes sanctions of default judgment or striking a pleading for spoliation against Ingevity.

The Court is not persuaded by Pioneer's emphasis on Ingevity's awareness of the possibility of litigation or Pioneer's citation to this Court's decision in *Ragan*. Though Pioneer highlights that the demolition began less than a week after its counsel made their intention to file suit clear, Pioneer also acknowledges that Ingevity made its decision to replace the road in the

---

[7] Ingevity employee Jarrod Wallace testified that two other Ingevity employees, Ike Kotey and Eddie Stanley, both raised concerns regarding the road's construction soon after Pioneer completed its work. ECF No. 102-6, p. 2-3. Mr. Kotey also testified that he visually observed what he believed to be defects in the road and that such observations influenced the decision to have further testing done. ECF No. 102-4, p. 3-4.
[8] Ike Kotey testified that the decision to replace the road was made in a meeting with other Ingevity personnel after determining that prior testing showed that the road was "good for nothing". ECF No. 87-14, p. 6.

month prior to that communication. Also, Ingevity's intent to suppress the truth, not its mere knowledge of the possibility[9] of litigation, is the key inquiry for most of Pioneer's requested spoliation sanctions. *See Wade*, 485 F.3d at 1035. Further, Pioneer's citation to *Ragan* ignores key factual distinctions. In *Ragan*, the defendant destroyed the fence weeks after the commencement of litigation and without any substantive justification for why he replaced the fence. 2017 WL 4764620 at *1-3. In this matter, Ingevity initiated the demolition of the road prior to Pioneer filing its complaint and after concerns emerged about the construction quality of the road.

The Court also declines to apply Pioneer's requested alternative sanction of exclusion of evidence against Ingevity. Exclusion of evidence as a sanction for spoliation may be permitted in circumstances that are more akin to negligence in which a party "knew or should have known" that the destroyed evidence would be relevant to impending litigation. *Dillon*, 986 F.2d at 267. Assuming that Ingevity is culpable under that standard, the Court does not find that the sanction is warranted because Pioneer engaged in a similarly blameworthy course of action. As the Court previously noted, Pioneer made minimal effort to do its own testing on the road after it knew Ingevity personnel raised concerns about the road's build quality. Pioneer has also not alleged that Ingevity ever denied any request to access the Plant to conduct testing or that Pioneer ever made such a request in the months prior to demolition. If Ingevity was aware of potential litigation during this time because of its communications with Pioneer's counsel, Pioneer must have been

---

[9] Pioneer asserts that one Ingevity decisionmaker testified that he knew of "imminent" litigation when they decided to demolish the road. ECF No. 110, p. 2. However, the testimony that Pioneer cites to support that assertion only shows that Ingevity employee Joseph Perry answered affirmatively to the question of whether he knew there was a "possibility" of litigation. ECF No. 87-13, p. 15.

15

equally aware.[10]  Accordingly, the Court finds that an exclusion of evidence sanction against Ingevity is not appropriate in these circumstances.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff-Counter Defendant Pioneer's Motion for Sanctions (ECF No. 87) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 9th day of November, 2023.

<div style="text-align:right">

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

</div>

---

[10] The Court previously found that Pioneer had engaged in months of "undue delay" in failing to attempt to visit the Plant after the state court issued the initial injunction to curtail any further demolition of the road.  ECF No. 53, p. 8. This creates doubt as to whether Pioneer was ever genuinely interested in conducting its own testing of the road.